# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-02720-SCT

*LATANYA LESHAWN DUBOSE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/17/2003 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT ROSS |
| ATTORNEY FOR APPELLANT: | PARKER SIMONS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | ANTHONY LAWRENCE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/02/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     Latanya Leshawn Dubose was indicted for the murder of her former boyfriend Leonard Ray Harris pursuant to Miss. Code Ann. §  97-3-19(1)(a).  On August 6-8, 2003, Dubose was tried by a jury in the Circuit Court of Jackson County, Mississippi, the Honorable Robert P. Krebs, presiding, for the crime of murder.  Dubose was convicted of manslaughter by the jury and sentenced to serve a term of 20 years in the custody of the Mississippi Department of Corrections, with 13 years to serve, 7 years suspended, and 5 years on post-release

supervision. The trial court also ordered Dubose to send a letter to the children of Harris apologizing for her actions. The trial court denied all of Dubose's post-trial motions. Dubose appealed to this Court.

**FACTS**

¶2. Dubose met Harris about six months prior to his death. Dubose had been dating Harris since January 2002. On July 21, 2002, Dubose told Harris that she no longer wanted to see him. Harris did not want to end the relationship. He arrived at Dubose's home in the morning and wanted to talk about the situation. Dubose told Harris that she did not want to work things out. Harris then grabbed Dubose by the head and dragged her to the floor. He got on top of her, put his hand around her neck and repeatedly told her that he would kill her.

¶3. Then, Harris pulled off her underwear, touched her inappropriately and stated that her private body parts belonged to him. She stated that his actions made her feel very bad and degraded. Dubose pushed Harris off her and went into the living room. Harris pleaded that they stay together, but Dubose refused again. Harris then slapped Dubose, got on top of her, began choking her and told her a second time that he would kill her. As Dubose was wrestling with Harris the telephone fell to the ground. A few of the telephone buttons made a noise and Dubose told Harris "they're coming, they're coming." Harris left the house shortly thereafter.

¶4. Dubose left her house to go to the police station. However, she stopped by Doug Cherry's house. Cherry was Harris's roommate and lived only two houses from Dubose's house. Dubose went to the house to tell Doug what had occurred and not to see Harris. At the time she went to Doug's house, Dubose was carrying a gun so that Harris could not hurt her.

2

She told Cherry to tell Harris that if he ever hurt her again then she was going to kill Harris. Dubose then left to go to the police station to press charges against Harris.

¶5.    Dubose testified to numerous incidents in which Harris beat her and threatened her life. She had never called the police prior to this incident because she was afraid that Harris would beat her.

¶6.    On her way to the police station, Dubose was wearing only a t-shirt and a robe. She stated that she was hysterical. However, as she drove to the station, she saw Harris's car at a Chevron station. Dubose parked her car behind Harris's car. At this point, Harris walked out of the store. Dubose yelled at Harris to look at what he had done to her face. After a few exchanges, in which Dubose exited her vehicle holding a gun, she told Harris that she was on her way to the police station to press charges against him. Dubose stated "I seen the look in his eyes, and I saw his face clinch, like he was going to come at me and hit me, and I just closed my eyes and I just shot." She stated that something had come over her, and she was scared.

¶7.    Dubose left the scene to return home. On her way home, Cherry called her on a cell phone, and she told him that she had shot Harris. Dubose went to a neighbor's house, Doris Rich, and told her what had happened. She went back to her house, and Lacricia Gardner, Dubose's cousin, called the police in her presence. Two police cars later arrived at the home. The police arrested Dubose and took her to the station.

¶8.    At trial Dr. Paul McGarry, a forensic pathologist, testified that he found that Harris received a gunshot wound that went in the back of the head, about three quarters of an inch to the right of the midline of the back of the head. The bullet angled upward, hit the inside of his

skull and ricocheted into the front of the head. The bullet then came to a rest at the front of the brain causing massive damage to the brain and death.

¶9.     On appeal, Dubose raises the following issues:

> **I.      Whether the verdict was against the weight and credibility of the evidence.**
>
> **II.     Whether Dubose's jury was properly sworn as required for capital petit jury.**
>
> **III.    Whether the trial court's written order in response to the Mississippi Supreme Court's inquiry concerning whether the jury was properly sworn is sufficient to show that the jurors properly swore an oath for the case.**
>
> **IV.     Whether the trial court erred by admitting State's Exhibit 3, a photograph of the deceased.**

## DISCUSSION

**I.      Weight of the evidence.**

¶10.    Dubose claims that she was convicted despite the State's inability to overcome her theory of self-defense. Even though the jury was properly instructed, Dubose claims that the trial court should not have submitted the issue to the jury and, in the alternative, the trial court abused its discretion by denying her motion for a directed verdict, peremptory instruction and her motion for acquittal notwithstanding the verdict. She requests that the Court reverse and render her conviction or grant her a new trial.

¶11.    In *Wade v. State*, 748 So.2d 771, 774 (Miss. 2000), this Court held:

> The issue of justifiable self-defense presents a question of the weight and credibility of the evidence rather than sufficiency and is to be decided by the jury. *Meshell v. State*, 506 So.2d 989, 991-92 (Miss.1987). The jury verdict in this case should not be overturned unless this Court is "convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow

4

it to stand would sanction an unconscionable injustice." *Gossett*, 660 So.2d [1285, 1294 (Miss. 1995).].

The Court in *Wade* further held "[t]he apprehension or fear that will justify killing another in self-defense must appear objectively real to a reasonable person of average prudence." 748 So. 2d. at 775 (citing *Hart v. State*, 637 So.2d 1329, 1339 (Miss. 1994)).

¶12.    This Court set out the standard for overwhelming weight of the evidence in *Dunn v. State,* 891 So. 2d 822, 826 (Miss. 2005).  This Court held:

> A motion for new trial challenges the weight of the evidence. *Sheffield v. State,* 749 So.2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. *Id.*

> This Court held in *McFee v. State,* 511 So.2d 130, 133 (Miss. 1987), that it has limited authority to interfere with a jury verdict. The Court looks at all the evidence in the light that is most consistent to the jury verdict. *Id.*

> [I]f there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgement might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

*Id.* at 133-34. See also *Edwards v. State,* 800 So.2d 454, 464-65 (Miss. 2001).

> This Court has held that a new trial will not be given unless the verdict is so contrary to the overwhelming weight of the evidence that an unconscionable injustice would occur by allowing the verdict to stand. *Groseclose v. State,* 440 So.2d 297, 300 (Miss. 1983).  However, if a jury verdict convicting a defendant is against the overwhelming weight of the evidence, then the remedy is to grant a new trial. *Collier v. State,* 711 So.2d 458, 461 (Miss. 1998).

¶13.    The trial court granted Jury Instruction D-6 concerning self-defense which stated:

> The Court instructs the jury that the Defendant having raised the claim of self-defense, the burden is on the State to prove beyond a reasonable doubt that the Defendant did not act in necessary self-defense, and unless the State meets this burden of proof and proves to you beyond a reasonable doubt that Latanya

5

Dubose was not acting in necessary self-defense, then it is your sworn duty to find the Defendant not guilty.

In addition, the trial court instructed the jury on two other self-defense instructions, D-6a and D-7. Jury instruction D-6a stated in part:

...[I]f you believe that under those circumstances it reasonably appeared to the Defendant that she had reasonable grounds to apprehend a design on the part of Leonard Ray Harris to kill the Defendant or do her some great personal injury, and that there reasonably appeared to the Defendant to be imminent danger of such designs being accomplished, then you may find the Defendant was justified in anticipating an attack by Leonard Ray Harris, and in such case you shall find the Defendant Not Guilty of the crime charges based on Self-Defense.

Jury Instruction D-7 stated:

The Court instructs the jury that to make the killing of another person justifiable on the ground of self-defense, the danger of the defendant must be either: actual, present and urgent; or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine that reasonableness of the ground upon which the defendant acts.

In your inquiry as to whether the Defendant, Latanya Dubose, had reasonable grounds to apprehend a design on the part of Leonard Harris, to kill her or to do some great bodily harm, your inquiry is not limited to a consideration of the Defendant's actions at the time the shooting occurred.

The issue of guilt was a jury question. Despite the above jury instructions, the jury still found Dubose guilty of manslaughter based on the evidence.

¶14. The testimony showed that Harris went to Dubose's house wanting to make the relationship work. When Dubose refused, Harris began to beat and threaten Dubose. Harris left Dubose's home. Then Dubose went to the home of Harris and Cherry, Harris's roommate. Cherry testified that Dubose "came in, and she was waiving a gun, and she said that when you see your boy, you tell him I'm going to shoot him." On the way to the police station, Dubose

6

saw Harris at a gas station. After a verbal exchange Dubose shot and killed Harris. Dubose testified that she thought that Harris was going to come after her once she told him that she was on the way to the police station to report his actions. Wanda Jones, the gas station attendant, knew Harris and saw him turn his back on Dubose outside. Dubose left her vehicle, Harris began to whirl around and then Jones heard a pop. Jones saw Dubose calmly return to her vehicle and drive away. Following the shooting, patrolman Danny Patrick arrived at the scene and took a picture of Harris's body. Patrick then went to Dubose's home with other officers. He saw a gun in the passenger seat of Dubose's vehicle. When he knocked on the door, he requested to see Dubose, who left with the police without incident.

¶15. Even with all the testimony, including references to alleged past abuse by Harris against Dubose, the jury found Dubose guilty of manslaughter. We find that the trial court did not abuse its discretion in denying Dubose's motions and there was enough evidence to overcome her theory of self-defense. Accordingly, we find that this issue is without merit.

### II. and III. Jury properly sworn.

¶16. Issues II and III are combined into one issue for purposes of this opinion. Dubose next argues that the jury was not properly sworn with the required capital petit jury oath as required by Mississippi statute and the Mississippi Constitution. This Court made an inquiry into whether the jury was sworn. The trial court's order was filed June 23, 2004, in response to this Court's inquiry. Despite the trial court's order, Dubose maintains that the order is insufficient to show that the jury was properly and legally sworn with the capital petit jurors oath or any type of petit jurors oath. Furthermore, Dubose claims that to allow a reconstruction of the

7

record from memory which benefits the State and is unfavorable to the defendant violates due process.

¶17.    In *Jones v. State*, 798 So.2d 1241, 1249 (Miss. 2001), this Court set forth the standard of review when swearing jurors is in issue:

> Jones next contends that the trial court failed to properly swear in the jury members, and therefore, the verdict is null and void. This assignment of error is almost identical to that found in *McFarland v. State*, 707 So.2d 166 (Miss.1997). "[T]he presumption is that the trial judge properly performed his duties...." *Bell v. State*, 360 So.2d 1206, 1215 (Miss.1978). As in *McFarland*, the verdict and sentencing orders contained language that the jury had been duly sworn and performed their duties accordingly. In his argument, Jones has failed to overcome the presumption of propriety. As such, we find this assignment without merit.

¶18.    In *Stewart v. State*, 881 So.2d 919, 923-24 (Miss. Ct. App. 2004), the Court of Appeals held:

> Stewart asserts that his conviction should be reversed because he was tried and convicted of capital murder by an unsworn jury. Stewart argues that the jurors in his case should have been sworn according to Mississippi Code Annotated Section 13-5-71 (Rev.2002), the petit juror oath, and Section 13-5-73 (Rev.2002), the jurors' oath for capital murder cases. A review of the record does not reveal that an oath was given to the jury; however, the sentencing order states that the jury was duly sworn. In *Bell v. State*, 360 So.2d 1206, 1215 (Miss.1978), the supreme court found no reversible error where the record did not reflect that the jury was specially sworn. The court held, in such a situation, there exists a rebuttable presumption that the trial judge properly performed his duties. *Id*. Also, when the judgment states that the jury was properly sworn it is presumed that the trial judge performed his duties. *Woulard v. State*, 832 So.2d 561, 567 (¶ 24) (Miss.Ct.App.2002). The failure of the court to specifically swear the jury in a capital case is waived where no objection is made by the defendant until the verdict is rendered. This issue cannot be raised for the first time on appeal. *McMillan v. State*, 191 Miss. 59, 61, 2 So.2d 823, 824 (1941) (citing *Hill v. State*, 112 Miss. 375, 383, 73 So. 66, 67 (1916)).
>
> Stewart did not object to the issue of the unsworn jury until his trial was completed and a verdict was rendered. Therefore, Stewart has procedurally waived his claim. His claim also fails on the merits because the sentencing order

clearly states that the jury was duly sworn. Stewart did not present sufficient evidence to overcome the presumption that the trial judge properly performed his duties.

*Stewart*, 881 So.2d at 923-24.

¶19. The record reflects that the August 8, 2003, sentencing order from the circuit court references the fact that the jury was duly sworn according to the law. This Court also remanded to the trial court ordering it to make determination of whether Dubose's jury had been sworn. In response, the trial court entered an order dated June 23, 2004. The trial court order confirmed that the jury was sworn and stated in part "the jury panels in the Dubose case were properly sworn and the sentencing order of August 11, 2003, although a form order, accurately reflects that the jury panels were properly sworn." Following the submittal of the trial court's order to this Court, counsel for Dubose filed a motion to strike the trial court order of June 23, 2004, and to remand for an evidentiary hearing on the jury swearing issue. This Court denied Dubose's motion. In addition, the record reflects a number of instances in which either the attorneys or the trial court acknowledged that the jury had been sworn.

¶20. We find that Dubose has not overcome the presumption that the trial court properly performed its duty to have the jury sworn. Accordingly, we find that this issue is without merit.

### IV. Victim photograph.

¶21. Dubose argues that State Exhibit-3, a photograph depicting the gunshot wound to the back of Harris's head, was not relevant pursuant to M.R.E. 401 because there was no dispute as to Harris's death nor that Dubose shot him. Even if the photograph is deemed relevant by this Court, Dubose contends that pursuant to M.R.E. 403 the probative value is outweighed by the prejudicial effect.

9

¶22.    The argument in *Randolph v. State*, 852 So.2d 547, 566 (Miss. 2002), is similar to Dubose's claim that there was no dispute as to the identity of the victim.    Nevertheless, this Court upheld the admission of the photograph in *Randolph*.    This Court set out the standard of review for admission of pictures of a gruesome crime scene in *Randolph*:

> This Court held that the admissibility of pictures of gruesome crime scenes is within the sound discretion of the trial court. *Chatman v. State*, 761 So.2d 851, 854 (Miss.2000). Reversal of the trial court will occur only where there is a clear abuse of discretion. *Id*.; *Davis v. State*, 551 So.2d [169, 173 (Miss. 1989)]. "The discretion of the trial judge 'runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.' " *Spann v. State,* 771 So.2d 883, 895 (Miss.2000)(quoting *Williams v. State*, 544 So.2d 782, 785 (Miss.1987)). Photographs are considered to have evidentiary value in the following instances:
>     1. "aid in describing the circumstances of the killing;
>     2. describe the location of the body and cause of death;
>     3. supplement or clarify witness testimony."
> *Spann v. State*, 771 So.2d at 895 (quoting *Westbrook v. State*, 658 So.2d 847(Miss.1995)).
>
> In *Davis v. State*, 551 So.2d at 173, this Court held that "photographs of the victim should not ordinarily be admitted into evidence where the killing is not contradicted or denied, and the corpus delicti and the identity of the deceased have been established." However, this Court stated that photographs of bodies may be admitted into evidence if they have probative value, are not too gruesome and are not used in an overly prejudicial or inflammatory way in a criminal case. *Id*. In Davis, this Court recognized that the defendant killed the victim and as such there was no need to establish the identity of the killer or victim. *Id*. The Court did find that the photographs had probative value and were properly admitted into evidence. *Id*.

*Randolph*, 852 So.2d at 566.

¶23.    Here, the trial court admitted the photograph after an on-the-record discussion with counsel.    The photograph depicted the bullet wound Harris received in the back of his head. Patrolman Patrick testified that the photograph was taken by him at the scene of the crime.    The

officer testified that the photograph depicted a close-up of Harris's head and represented his body as Patrolman Patrick found the victim lying on the ground at the scene. In addition, the photograph was probative of Harris's means of death. The pathologist, Dr. McGarry, testified and used the photograph to explain to the jury the trajectory of the bullet and how Harris died of the bullet wound. Also, as the State argued at trial, the fact that Harris was shot in the back of his head has relevance to Dubose's claim that she acted in self-defense. Clearly, the photograph had probative value and was not unfairly prejudicial. The photograph showed the position and location of the body at the time of death and assisted the jury in understanding the cause of death. Accordingly, this issue is without merit.

## CONCLUSION

¶24.    We affirm the judgment of the Circuit Court of Jackson County, Mississippi.

¶25.    **CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY (20) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THIRTEEN (13) YEARS TO SERVE, SEVEN (7) YEARS SUSPENDED AND FIVE (5) YEARS ON POST RELEASE SUPERVISION, AFFIRMED.**

       **SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**