962 So.2d 606 (2006)
Billy Watson BONNER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01502-COA.
Court of Appeals of Mississippi.
December 5, 2006.
Rehearing Denied April 24, 2007.
*607 Helen Bagwell Kelly, Adam A. Pittman, Batesville, attorneys for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before KING, C.J., SOUTHWICK and IRVING, JJ.
*608 IRVING, J., for the Court.
¶ 1. Following a jury trial, Billy Watson Bonner was convicted of conspiracy to sell methamphetamine and of the sale of methamphetamine. The trial court sentenced Bonner on both accounts, as a habitual offender, to life in prison without the possibility of parole, reduction, suspension, or probation. Aggrieved, Bonner appeals and asserts that the trial court erred in denying his motion for a judgment notwithstanding the verdict as to the conspiracy charge and that the court erred in failing to review his sentence in light of the Eighth Amendment's prohibition against cruel and unusual punishment.
¶ 2. We find no error; therefore, we affirm Bonner's conviction and sentence.

FACTS
¶ 3. On October 24, 2003, Leigh Vold, a confidential informant, approached Keith Beck to purchase methamphetamine.[1] Beck informed Vold that he did not have any methamphetamine and, in turn, contacted Bonner from whom had purchased methamphetamine on prior occasions. Beck arranged for a sale to occur at his home later in the day.
¶ 4. Vold and Beck have slightly different accounts of the actual exchange of the methamphetamine. According to Vold, when Bonner arrived at Beck's home, Bonner pulled his 4-wheeler next to Vold's car and gave a cigarette package containing 2.2 grams of methamphetamine to Beck, who was sitting in the passenger seat. Vold further testified that Beck handed the cigarette package to her, and she paid Bonner two-hundred-fifty dollars. However, Beck testified that he handed the money to Bonner who threw the cigarette package into the car.
¶ 5. Bonner made a request for a directed verdict at the conclusion of the State's case-in-chief on the grounds that the State had failed to prove a prima facie case for conspiracy. The trial court denied the motion. Bonner did not put on any evidence and failed to renew the motion at the close of the evidence.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Denial of Judgment Notwithstanding the Verdict
¶ 6. Bonner contends that "[t]he trial court erred in denying his motion for a judgment notwithstanding the verdict as to the charge of conspiracy to sell methamphetamine" because the State failed to produce sufficient evidence establishing that he and Beck entered into a common plan to sell methamphetamine and that they knowingly intended to further that common purpose. The State responds that the trial court did not err because Bonner never filed a motion for a judgment notwithstanding the verdict. We have scoured the record and have been unable to find that Bonner ever filed such a motion. We agree with the State that we cannot place a trial court in error on a matter not presented to it for consideration. Jones v. State, 606 So.2d 1051, 1058 (Miss.1992).
¶ 7. While Bonner did not file a motion for a judgment notwithstanding the verdict, he did make an ore tenus motion for a directed verdict at the close of the prosecution's evidence. The motion was denied, and the matter was submitted to the jury, which subsequently found Bonner guilty as charged. A perusal of the record indicates that no peremptory instruction was filed or orally requested following the close of the case.
*609 ¶ 8. On a later day, the court took up the matter of sentencing and the disposition of post-trial motions. The record reflects the following:
MS. KELLY [Attorney for Bonner]: The defendant makes a motion ore tenus for a new trial, particularly failure for [sic] the court to allow removal of the juror who we discovered during the trial of the case had adverse relations with the family members and did not reveal this in voir dire, and for failure to allow the defendant 12 peremptory challenges during jury selection.
The record does not reflect the filing of any post-trial motions.
¶ 9. It is well settled that when a motion for a directed verdict is overruled at the conclusion of the State's evidence, and the appellant proceeds to introduce evidence in his own behalf, the point is waived. Fields v. State, 293 So.2d 430, 432 (Miss.1974) (citing Hankins v. State, 288 So.2d 866, 867 (Miss.1974); Smith v. State, 245 So.2d 583, 586 (Miss.1971)). We can find no Mississippi case addressing whether the issue is waived if the defendant offers no evidence after the motion is overruled at the conclusion of the State's case but (1) does not renew the motion at the close of the entire case, (2) does not ask for a peremptory instruction, and (3) does not make a motion for a judgment notwithstanding the verdict after the jury finds him guilty. It seems reasonable to conclude that, if producing defense evidence waives the point, a failure to produce does not, although, based strictly on procedural considerations, there may be reasons to bring the matter to the trial judge's attention again. The procedural posture of this case illustrates this point. As stated, Bonner argues that the trial court erred in denying his motion for a judgment notwithstanding the verdict. That did not happen, because when Bonner made his motion for a directed verdict, there was no verdict to set aside. If Bonner had made a motion for a judgment notwithstanding the verdict after the jury had returned its verdict, the issue would be properly framed.[2]
¶ 10. No additional evidence was adduced after Bonner made his motion for a directed verdict at the close of the prosecution's evidence. A motion for a directed verdict (no matter the procedural junction when it is made), as well as a motion for a judgment notwithstanding the verdict, challenges the sufficiency of the evidence. Wetz v. State, 503 So.2d 803, 807 (Miss. 1987). "When the sufficiency of the evidence is challenged on appeal, [an appellate court] properly should review the circuit court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court." Id. Bonner's motion at the conclusion of the prosecution's case has challenged the sufficiency of the evidence. Thus, we consider that evidence.
¶ 11. Mississippi Code Annotated section 97-1-1 (Supp.2005), provides that the crime of conspiracy is committed when two or more persons conspire to commit a crime or to accomplish any unlawful purpose. Each alleged conspirator must agree to join the other in a common plan and "each must intend to further a common and unlawful purpose." Taylor v. State, 536 So.2d 1326, 1328 (Miss.1988). A conspiracy may be proven by the acts and conduct of the alleged conspirators; thus, no formal or express agreement is required. Thomas v. State, 591 So.2d 837, *610 839 (Miss.1991) (citing Clayton v. State, 582 So.2d 1019, 1022 (Miss.1991)).
¶ 12. As support, Bonner cites McDougle v. State, 721 So.2d 660, 663(¶ 13) (Miss. Ct.App.1998), where this Court reversed a defendant's conviction, finding that there was no evidence that McDougle knew that the facilitator would bring potential customers to him to purchase illegal drugs. We find that McDougle is distinguishable from this case because Beck testified that he and Bonner entered into an agreement to sell methamphetamine and that he had purchased methamphetamine from Bonner on prior occasions. Thus, there is evidence in the record that Bonner knew that Beck would be bringing potential customers to his home to purchase illegal drugs. Beck testified to the following:
Q. [BY PROSECUTOR]: On October 24th, 2003, did you and Billy Bonner have an agreement to sell methamphetamine?
A. Yes, we did.
Q. And on October 24th, 2003, did the Defendant Billy Bonner sell methamphetamine to Leigh Vold?
A. Yes, he did.
Q. Has anybody under my control told you to testify or what to say?
A. No, sir, nobody has told me to say anything.
¶ 13. In light of the testimony at trial, we find that there was sufficient evidence from which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, this issue is without merit.
2. Eighth Amendment Prohibition Against Cruel and Unusual Punishment
¶ 14. Bonner relies on the three-pronged proportionality analysis announced in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), to support his argument that his life sentence is violative of the Eighth Amendment to the United States Constitution. In Solem, the United States Supreme Court set the standard for proportionality as follows: "[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Id. at 291, 103 S.Ct. 3001.
¶ 15. However, the Court limited Solem in Harmelin v. Michigan, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), to the extent that it found a proportionality guarantee in the Eighth Amendment. "In light of Harmelin, it appears that Solem is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of `gross disproportionality.'" Hoops v. State, 681 So.2d 521, 538 (Miss.1996) (quoting Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir.1996)).
¶ 16. Bonner contends that the trial judge had the responsibility to review, and possibly modify, his life sentence. Bonner relies on Clowers v. State, 522 So.2d 762, 765 (Miss.1988), to support his argument. We find that Clowers offers no support for Bonner's contention that the trial court had an obligation to automatically review, and possibly modify, his life sentence. It is true that the trial judge in Clowers refused to sentence Clowers, a habitual offender, to the statutorily-mandated sentence of fifteen years, finding instead that the mandated sentence was disproportionate to Clowers' crime: uttering a forged $250 check. On appeal, the Mississippi Supreme Court affirmed, finding that "the trial court did not commit reversible error *611 in reducing what it found to be a disproportionate sentence under the facts of this case."
¶ 17. We interpret Clowers to hold that, if warranted by the special and unique facts of a case, a trial judge may depart from the sentencing mandates of our recidivism statutes if the judge determines that the mandated sentence is disproportionate to the crime. As we have already stated, Clowers does not stand for the proposition that a trial judge must automatically review a recidivist's statutorily-mandated sentence.
¶ 18. Bonner's life sentence complies with Mississippi Code Annotated section 99-19-83 (Rev.2000), which provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
The Mississippi Supreme Court has held that when a trial court imposes a sentence which complies with statutory limitations, the court will not be held in error and will not have abused its discretion. Johnson v. State, 461 So.2d 1288, 1292 (Miss.1984) (citing Contreras v. State, 445 So.2d 543, 546 (Miss.1984)).
¶ 19. In Huntley v. State, 524 So.2d 572 (Miss.1988), the Mississippi Supreme Court stated, "[t]his is not the first time that Mississippi's habitual offender statute has been challenged as cruel and unusual punishment. This Court has consistently held that sentences under Mississippi Code Annotated section 99-19-83 do not constitute cruel and unusual punishment." Id. at 575 (citing Jackson v. State, 483 So.2d 1353 (Miss.1986); Adams v. State, 410 So.2d 1332 (Miss.1982); Pace v. State, 407 So.2d 530 (Miss.1981); Baker v. State, 394 So.2d 1376 (Miss.1981); Hayden v. Foryt, 407 So.2d 535 (Miss.1981); White v. State, 374 So.2d 843 (Miss.1979); Bell v. State, 355 So.2d 1106 (Miss.1978)).
¶ 20. In light of the gravity of Bonner's current offense, and his prior predicate offenses (grand larceny, forgery, and robbery), the trial court's imposition of a life sentence does not give rise to an inference of gross disproportionality; thus, we do not proceed with an Eighth Amendment proportionality analysis.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF YALOBUSHA COUNTY OF CONVICTION IN COUNT ONE OF CONSPIRACY TO SELL METHAMPHETAMINE AND CONVICTION IN COUNT TWO OF SALE OF METHAMPHETAMINE AS A HABITUAL OFFENDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE, REDUCTION, SUSPENSION, OR PROBATION FOR COUNT ONE AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE, REDUCTION, SUSPENSION, OR PROBATION FOR COUNT TWO, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YALOBUSHA COUNTY.
LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, *612 BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.
NOTES
[1] Vold and Beck had previously been involved in a sexual relationship.
[2] A motion for a directed verdict may be made either at the close of the prosecution's case or at the close of all the evidence, while a motion for a judgment notwithstanding the verdict is proper only after an adverse verdict has been returned.