966 So.2d 885 (2007)
James VARDAMAN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00734-COA.
Court of Appeals of Mississippi.
October 16, 2007.
*888 Donna Sue Smith, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. James Vardaman was convicted for possession of 250 dosage units of pseudoephedrine, in violation of Mississippi Code Annotated Section 41-29-313(2)(c) (Rev.2005), and conspiracy to manufacture methamphetamine, in violation of Mississippi Code Annotated Section 41-29-139 (Rev.2005). He was sentenced as an habitual offender to two consecutive terms of life imprisonment without the possibility of parole. Vardaman now appeals and argues that: (1) there was insufficient evidence to support the jury verdict, (2) the trial court erred in its instruction to the jury on note taking, (3) it was error to sentence him as an habitual offender, and (4) he was denied effective assistance of counsel. We find no error and affirm.

FACTS
¶ 2. On July 6, 2004, James Vardaman, Jerry Mullins and Julie Mason traveled to Brandon to renew Vardaman's vehicle tag. They then drove across the street to a Shell station. Vardaman walked from the Shell station to Dollar General where he purchased pseudoephedrine pills that contain a key ingredient necessary to manufacture methamphetamine. The store manager of the Dollar General became suspicious because Vardaman was buying more than two boxes of pseudoephedrine and called 911 to report the purchase.
¶ 3. Mullins and Mason drove over from the Shell station to pick up Vardaman at the Dollar General. Vardaman got back into the car with the pills he bought concealed in his pants. Vardaman then asked Mullins to go into the Dollar General and get "some." Vardaman did not specifically say pseudoephedrine pills but Mullins knew what he was referring to because, one week prior to this incident, Mullins had shown Vardaman how to "cook" crystal methamphetamine. Mullins went inside and purchased two boxes of pseudoephedrine pills. The three defendants drove over to Family Dollar where Vardaman bought more pills.
¶ 4. After returning to the car, Vardaman noticed an unmarked car used by the police. Upon seeing the police, they decided to pull over at a BP station to get rid of the pills. Vardaman began popping the pills out of the blister packs. He got out of the car and threw all of the empty pill boxes and blister packs into a garbage can at the BP.
¶ 5. Pursuant to the 911 call from the Dollar General manager, narcotics agent Martin Mann and his partner, Matt Thornton, had been following Vardaman, Mullins and Mason since they left Family Dollar. Upon seeing Vardaman put a yellow bag into the BP garbage can, Mann called for a backup unit to make a traffic stop and Vardaman, Mullins and Mason were taken into custody.
*889 ¶ 6. Mason, who had been driving, gave Mann permission to search the vehicle. He found a yellow plastic bag inside the dash that contained numerous pseudoephedrine pills. He also recovered seven empty pseudoephedrine pill boxes and seven empty blister packs from the yellow bag in the BP garbage can.
¶ 7. Back at the police station, Mann counted the pills found in the dash of the car and determined that there were a total of 288 pills. Mann told his partner the total number of pills but never wrote the number down in a report.
¶ 8. While Mann and Thornton were conducting another interview, Vardaman somehow accessed the bag of pills and concealed them in his pants. Vardaman then repeatedly asked to use the bathroom. Another officer escorted him to the bathroom and left the door open in accordance with police policy. The officer saw Vardaman take a yellow bag out of his pants and began to dump several white pills into the toilet. A struggle ensued to keep Vardaman from flushing the toilet. A second officer also observed the white pills falling into the toilet and saw that the toilet was full of a pile of pills. Only one intact pill was recovered.
¶ 9. Vardaman was later interviewed by Officers Mann and Thornton. In a written statement, Vardaman admitted purchasing two boxes of pills at Dollar General and two boxes at Family Dollar. He also admitted that he did throw away the empty packs at the BP station.
¶ 10. In addition to his written statement, Vardaman told the officers that he and the other defendants planned to "make a cook" that night or the next day; in other words, they planned to extract the ephedrine from the pills in order to manufacture crystal methamphetamine. This statement was never recorded because the police officers erroneously believed the interview was being videotaped.
¶ 11. Both Mullins and Mason were convicted on charges related to the arrest. At trial, Mullins testified that he had "cooked meth" with Vardaman before and both Mullins and Mason said that they had used methamphetamine with Vardaman.

ANALYSIS
I. Was the evidence offered at trial sufficient to support the jury's verdict?
¶ 12. Vardaman argues that the trial court erred when it denied his motion for a directed verdict because the evidence at trial was insufficient to uphold his convictions for possession of 250 dosage units of pseudoephedrine and conspiracy to manufacture methamphetamine. Specifically, he contends that there is no proof that he possessed 250 pseudoephedrine pills and no proof that he and either of the defendants conspired to manufacture methamphetamine.
¶ 13. When reviewing a motion for directed verdict, the Court looks to the sufficiency of the evidence. Gleeton v. State, 716 So.2d 1083, 1087(¶ 14) (Miss. 1998). All of the evidence must be construed in a light most favorable to the verdict. Id. "We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Id. (quoting Wetz v. State, 503 So.2d 803, 808 (Miss.1987)).
a. Possession of 250 dosage units of pseudoephedrine
¶ 14. Vardaman argues that the State did not show that he possessed the requisite 250 pills because only seven boxes and their respective blister packs were recovered from the garbage can at the BP *890 station. Each box contained 24 pills; therefore, the seven boxes accounted for 168 pills. However, Sergeant Mann testified that he had no doubt that he counted 288 pills in the bag recovered from Vardaman's vehicle. Detective Thornton also testified that the total number of pills was above 250. Furthermore, Mullins testified that he was placed in the same jail cell as Vardaman after the arrest. Vardaman told Mullins that his wife had picked up his car and found more pills that the police did not recover indicating that Vardaman was in possession of more pills than just those he had bought that day.
¶ 15. We find that there was sufficient testimonial evidence for the jury to conclude that Vardaman was in possession of 250 dosage units of pseudoephedrine. This issue has no merit.
b. Conspiracy to manufacture methamphetamine
¶ 16. Vardaman further argues that there was insufficient evidence of a conspiracy between himself and Mullins or Mason. He bases this argument primarily on the fact that he did not specifically tell Mullins to purchase pseudoephedrine pills but instead asked Mullins to go into the Dollar General and get "some."
¶ 17. A conspiracy requires that the conspirator enter "into a common plan and knowingly intend to further its common purpose." Nixon v. State, 533 So.2d 1078, 1092 (Miss.1987), overruled on other grounds by Wharton v. State, 734 So.2d 985, 991(¶ 23) (Miss.1998). A common plan may be "inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators. Furthermore, the existence of a conspiracy, and a defendant's membership in it, may be proved entirely by circumstantial evidence." Id. A formal agreement is not required. Id.
¶ 18. Mullins testified that despite specific instructions from Vardaman, he knew exactly what to purchase. Because of their history of "cooking meth" and using meth together, Mullins knew exactly what to do. He went into the store, bought two boxes of pseudoephedrine pills and gave them to Vardaman. Additionally, while being interviewed by the police, Vardaman admitted that the purpose of their trip had been to purchase pseudoephedrine. Detective Thornton testified to the following:
Q: Did the defendant indicate to you in his statement that he was actively involved with the other two parties that were in the vehicle in procuring this pseudoephedrine for the purpose of cooking crystal methamphetamine?
A: Yes.
¶ 19. Vardaman argues that his admissions about his plans to manufacture methamphetamine were not included in his written statement and that all he admitted to in writing was purchasing a legal amount of pseudoephedrine. However, both officers who interviewed Vardaman testified to his statements about his plan to "cook meth." It is the role of the jury, and not this Court, to weigh such evidence. Meshell v. State, 506 So.2d 989, 992 (Miss. 1987).
¶ 20. We find that there was sufficient evidence for a reasonable jury to find that Vardaman was involved in a conspiracy to manufacture methamphetamine. Accordingly, this issue has no merit.
II. Does the trial court's delay in instructing the jury on note taking present a valid issue on appeal?
¶ 21. Vardaman contends that the trial judge's instruction to the jury regarding note taking was untimely and prejudiced *891 the jury's ability to make an informed decision about whether or not they should take notes.
¶ 22. Rule 3.14 of the Uniform Rules of Circuit and County Court allows the trial judge to decide whether or not the jury will be given an opportunity to take notes during trial. The rule requires that the judge give both a preliminary instruction and an instruction at the close of all evidence setting forth the appropriate use of juror notes. URCCC 3.14(2).
¶ 23. Here, the court asked if any jurors were interested in taking notes during trial. Six jurors responded that they would like to do so. However, the court did not give the preliminary instruction regarding note taking until after the State had begun to examine its first witness. During a break early on in the examination, the court then gave the proper instruction.
¶ 24. The Mississippi Supreme Court ruled that "[i]n order to preserve a jury instruction issue on appeal, a party must make a specific objection to the proposed instruction in order to allow the lower court to consider the issue." Crawford v. State, 787 So.2d 1236, 1244-45(¶ 35) (Miss.2001). This Court may not reverse upon an issue that has not been preserved for appeal. Haddox v. State, 636 So.2d 1229, 1240 (Miss.1994). Because defense counsel did not object to the timing of the instruction, this issue may not be presented on appeal.
¶ 25. Even so, the delay in giving the instruction constituted a harmless error on the part of the trial judge. To warrant reversal on an issue, a party must show both error and a resulting injury. Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 221 (Miss.1969). An error is only grounds for reversal if it affects the final result of the case. Id.
¶ 26. Here, those jurors who wished to take notes had already decided to do so before the State presented its first witness. After the judge gave the instruction, no juror changed his mind about whether or not to take notes. Thus, the short delay in receiving the note taking instruction does not warrant reversal. Indeed, Vardaman does not argue how he may have been prejudiced by this delay. This issue has no merit.
III. Was Vardaman properly sentenced as an habitual offender?
¶ 27. Vardaman contends that it was improper for the trial court to sentence him to life imprisonment as an habitual offender. Specifically, he argues that the State did not show that he served a prison term of one year or more for each of two prior felony convictions.
¶ 28. This Court reviews the terms of a sentence under an abuse of discretion standard. "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." Hoops v. State, 681 So.2d 521, 537 (Miss. 1996). Thus, if Vardaman qualifies as an habitual offender under the statute, this Court may not overturn the trial judge's prescribed sentence.
¶ 29. The State amended its indictment to charge Vardaman as an habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev.2000). The statute states that
[e]very person convicted in this state of a felony who shall have been convicted twice previously of any felony . . . upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution . . . and where *892 any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Miss.Code Ann. § 99-19-83.
¶ 30. At trial, a custodian of records for the Mississippi Department of Corrections testified regarding Vardaman's prior felony convictions and prison timed served. She testified that the records reflect Vardaman served at least a year in jail under a forgery conviction in Lincoln County. She further stated that a jury in Copiah County convicted Vardaman of simple assault on a police officer on August 2, 2000, and he was sentenced to two years imprisonment. He also entered a guilty plea to possession of methamphetamine on November 9, 2000, and received a three-year sentence. The M.D.O.C. records show that Vardaman served those two terms consecutively from December 6, 1999, until April 7, 2004.
¶ 31. Vardaman argues that because the simple assault charge and the possession charge were brought on the same indictment, the State did not prove that the crimes arose out of separate incidents at separate times. However, the trial court, noting that Vardaman had produced no evidence to controvert the records of MDOC, found that the crimes were separate and arose out of different circumstances. The assault on a police officer was the result of a jury verdict and the conviction for possession of methamphetamine resulted from a guilty plea.
¶ 32. Regardless of whether the crimes arose from different circumstances, there is evidence that Vardaman served at least one year for each of two prior felonies. The MDOC custodian of records testified that Vardaman served at least one year for the forgery conviction in Lincoln County and that he served at least one year under both his two-year sentence for simple assault on a police officer and his three-year sentence for possession of methamphetamine. The forgery conviction clearly arose out of different circumstances than either the assault or the possession charge.
¶ 33. Thus, the trial court did not err in finding that Vardaman qualified to be sentenced under the habitual offender statute. This issue has no merit.
IV. Was Vardaman denied effective assistance of counsel?
¶ 34. Lastly, Vardaman claims that he was denied effective assistance of counsel because his attorney failed to (1) alert the judge that the petit jury was never sworn in, (2) submit a cautionary jury instruction on accomplice testimony, (3) submit a cautionary jury instruction advising the jury to not consider testimony about Vardaman's prior convictions, and (4) object to the admission of the MDOC records.
¶ 35. To prove ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with the defendant. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052.
¶ 36. "To prevail on this claim, [the defendant] must show under Strickland *893 that counsel's conduct `so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Havard v. State, 928 So.2d 771, 790 (Miss.2006) (quoting Strickland, 466 U.S. at 686, 104 S.Ct. 2052).
a. Swearing of the jury
¶ 37. Vardaman argues that the record does not reflect that the petit jury was properly sworn as required under Mississippi Code Annotated Section 13-5-71 (Rev.2002). He states that his attorney's performance was ineffective because no objection was made to this fact at trial thereby waiving the issue on appeal. However, Vardaman has failed to prove that his attorney's inaction constitutes deficient performance.
¶ 38. When reviewing the swearing of jurors, there is a rebuttable presumption "that the trial judge properly performed his duties." Bell v. State, 360 So.2d 1206, 1215 (Miss.1978). Furthermore, even if the record does not reflect that the oath was given to the jury, "when the judgment states that the jury was properly sworn it is presumed that the trial judge performed his duties." Dubose v. State, 919 So.2d 5, 10(¶ 18) (Miss.2005) (quoting Stewart v. State, 881 So.2d 919, 923(¶ 13) (Miss.Ct.App.2004)).
¶ 39. The judgment entered on November 2, 2005, states that the jury was "empaneled and sworn according to law." Because Vardaman has offered no evidence to rebut the presumption that the trial court properly performed its duty, he has not shown that his counsel's lack of objection on the issue constituted deficient performance.
b. Jury instruction regarding accomplice testimony
¶ 40. Vardaman claims that his attorney's failure to request a jury instruction regarding accomplice liability was a denial of his right to effective assistance of counsel. Even assuming, which we do not, that this rose to the level of deficient representation, Vardaman cannot prove that the outcome of the trial would have been different had counsel requested the instruction.
¶ 41. In fact, "[i]t is within the discretion of the trial court to grant a cautionary instruction pertaining to the testimony of an accomplice witness." Slaughter v. State, 815 So.2d 1122, 1134(¶ 64) (Miss.2002). The trial judge abuses that discretion when the "State's evidence rests solely upon the testimony of an accomplice. . . ." Id. Here, the State's evidence did not rest solely on the testimony of Mullins or Mason. Thus, the instruction was not mandatory and Vardaman has not shown that, if it had been given, it would have changed the jury's verdict.
c. Jury instruction regarding testimony about Vardaman's prior convictions
¶ 42. On this issue, Vardaman fails to prove that his attorney's actions were deficient. To the contrary, his attorney filed a pre-trial motion to prevent any statements relating to Vardaman's prior convictions to be presented at trial and immediately objected when Mullins testified that he had "done time" with Vardaman. Thereupon, the court gave a curative instruction and told the jury to not consider the testimony for any purpose in the case. We find that the failure to request another jury instruction on this issue does not rebut the presumption that counsel's actions were reasonable.
d. MDOC records
¶ 43. Vardaman further claims that his counsel provided ineffective representation *894 when he failed to object to the MDOC records introduced to prove his status as an habitual offender. Specifically, he contends that the records were not self-authenticating under Mississippi Rules of Evidence 902.
¶ 44. This claim is without merit because the record shows that the MDOC records were authenticated through the testimony of a witness with knowledge, an acceptable method of authentication under Rule 901. Testimony regarding the records was given by "a custodian of the records" for the MDOC. Her testimony was a sufficient manner of authentication.
¶ 45. After examining the totality of the circumstances, Vardaman's claim that he was denied effective assistance of counsel is without merit.
¶ 46. We find no error and affirm.
¶ 47. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION ON COUNT I, POSSESSION OF 250 DOSAGE UNITS OF PSEUDOEPHEDRINE, AND SENTENCE OF LIFE IMPRISONMENT AND COUNT II, CONSPIRACY TO MANUFACTURE METHAMPHETAMINE, AND SENTENCE OF LIFE IMPRISONMENT, EACH SENTENCE SHALL NOT BE REDUCED OR SUSPENDED AND DEFENDANT SHALL NOT BE ELIGIBLE FOR PAROLE OR PROBATION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.