MYERS, P.J.,
for the Court.
¶ 1. Richard Anderson was indicted by a DeSoto County grand jury on one count of conspiracy to sell a controlled substance and one count of the sale of a controlled substance. A jury subsequently found Anderson guilty of the conspiracy offense and not guilty of the crime of selling a controlled substance. He was sentenced to five years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Anderson appeals arguing the evidence presented at trial was legally insufficient to support his conspiracy conviction. Finding no error, we affirm.
FACTS
¶ 2. On September 14, 2006, officers with the Horn Lake Police Department met with their confidential informant, Harlyn Holt, to arrange for Holt to purchase narcotics from Anderson and his niece, Kristina Anderson. At the “pre-buy” location, the police outfitted Holt with audio and video surveillance equipment. The police also gave Holt marked dollar bills to use in the buy. The police searched Holt’s person and his automobile to ensure that he had no drugs or money other than the money that was provided by the police.
¶ 3. Prior to this meeting, Holt and Kristina had been exchanging text messages regarding Holt’s desire to purchase hydrocodone, in the form of Lortab pills, from Kristina and Anderson. Kristina instructed Holt that the hydrocodone would be available at her house once Anderson got off of work that day at approximately 5:30 p.m. After his “pre-buy” meeting with the police, Holt went to Kristina’s house. He waited approximately one hour before Anderson arrived. When Anderson arrived, he and Kristina went into a back room of the house. Kristina returned with fifteen hydrocodone tablets, and Anderson then walked outside to his truck and returned with another hydrocodone tablet.
¶ 4. Approximately forty minutes after Anderson arrived at Kristina’s house, Holt left the residence and met the officers at a “post-buy” meeting. Holt then turned over the bag of phis to the police. The pills were subsequently turned over to the Mississippi Crime Laboratory and tested. The results revealed that the fifteen “My-lan” pills initially given to Holt were confirmed to be hydrocodone and acetaminophen; the remaining “Watson” pill was *1089 preliminarily tested, but it could not be confirmed and verified to be hydrocodone.
¶ 5. Anderson was arrested and indicted for conspiracy to sell a controlled substance and sale of a controlled substance. A jury found Anderson guilty of the conspiracy to sell a controlled substance and not guilty for the sale of a controlled substance. The trial court sentenced Anderson to five years in the custody of the MDOC. Anderson filed a post-trial motion for a judgment notwithstanding the verdict, which the trial court denied.
¶ 6. From that judgment, Anderson timely appeals.
Motion for a Directed Verdict and a Judgment Notwithstanding the Verdict
¶ 7. “A motion for a directed verdict ..., as well as a motion for a judgment notwithstanding the verdict, challenges the [legal] sufficiency of the evidence.” Bonner v. State, 962 So.2d 606, 609(¶ 10) (Miss.Ct.App.2006) (citing Wetz v. State, 503 So.2d 803, 807 (Miss.1987)). In Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005), our supreme court reiterated the standard of review for legal sufficiency of the evidence, explaining as follows:
[T]he critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction. However, this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
(Citations and quotations omitted). “[I]f a review of the evidence reveals that it is of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense, the evidence will be deemed to have been sufficient.” Id. (citations omitted).
¶ 8. Mississippi Code Annotated section 97-1-1 (Rev.2006) makes it unlawful for “two (2) or more persons [to] conspire ... [t]o commit a crime[.]” Our supreme court has defined the act of conspiracy to mean the “combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully, the persons agreeing in order to form the conspiracy. The offense is complete without showing an overt act in furtherance of the conspiracy.” Brown v. State, 796 So.2d 223, 225(¶ 9) (Miss.2001) (quoting Peoples v. State, 501 So.2d 424, 428 (Miss.1987)). The offense is complete upon formation of the agreement. Vickers v. State, 994 So.2d 200, 212(¶ 39) (Miss.Ct.App.2008). “The agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts and conduct of the alleged conspirators.” Id. (citation omitted). Also, “[conspiracy is a complete crime in itself which does not merge into the completed offense.” Stovall v. State, 873 So.2d 1056, 1058(¶ 12) (Miss.Ct.App.2004) (citing State v. Thomas, 645 So.2d 931, 933 (Miss.1994)).
¶ 9. This Court addressed a similar scenario to the case at bar in Bonner. There, Billy Watson Bonner was convicted of conspiracy to sell methamphetamine and of the sale of methamphetamine. Bonner, 962 So.2d at 608(¶ 1). Bonner appealed *1090 his conviction. He argued that the trial court erred in denying his motion for a judgment notwithstanding the verdict “because the State [had] failed to produce sufficient evidence establishing that he and [his co-conspirator] entered into a common plan to sell methamphetamine and that they knowingly intended to further that common purpose.” Id. at (¶ 6). At trial, Bonner’s co-conspirator testified that the two had entered into an agreement to sell methamphetamine, and that he had purchased methamphetamine from Bonner on prior occasions. Id. at 610(¶ 12). This Court held that this testimony established that Bonner knew his co-conspirator would bring potential customers to his house to purchase illegal drugs. Id. In viewing the legal sufficiency of the evidence, this Court found that the jury “could have found the essential element of conspiracy beyond a reasonable doubt.” Id. at (¶ 13).
¶ 10. Similarly, the supreme court affirmed a conviction of conspiracy to distribute cocaine in Temple v. State, 498 So.2d 379 (Miss.1986). There, the supreme court found the testimony of the defendant’s intermediary, who had purchased cocaine from the defendant and then attempted to sell it to an undercover police officer, coupled with testimony from the police officers involved in surveillance of the intermediary, were sufficient to support defendant’s conviction of conspiracy to distribute cocaine. Id. at 381.
¶ 11. This Court has also found that the evidence was legally sufficient to support a conspiracy conviction where the accomplice testified that he knew the defendant was asking him to buy pseudoephedrine because of their history of cooking methamphetamine together, and police officers testified that the defendant had admitted to them that the purpose of his trip to the store had been to purchase pseudoephed-rine for purposes of “cooking” methamphetamine. See Vardaman v. State, 966 So.2d 885, 890(¶ 18) (Miss.Ct.App.2007).
¶ 12. In Nobles v. State, 879 So.2d 1067, 1072(¶ 12) (Miss.Ct.App.2004), where a defendant was charged, inter alia, with the crime of conspiracy, an undercover narcotics agent testified that the defendant had sold him the crack cocaine used in the transaction with a confidential informant. This Court found that the evidence adduced by the agent’s testimony that a co-perpetrator directed him to the defendant at the time of the “buy-bust,” coupled with the fact that when the defendant was arrested, $550 in cash — of which $500 was marked as state funds, and a plastic bag containing cocaine were found in his pocket, more than sufficiently supported the jury’s finding of guilt. Id.
¶ 13. Here, Anderson submits that no direct evidence was presented at trial establishing that he had communicated directly with Kristina regarding the sale of hydrocodone pills on September 14, 2006. However, a conspiracy agreement does not have to be formal or expressed; it may be inferred from the circumstances, in particular, the acts and conduct of the alleged conspirators. Vickers, 994 So.2d at 212(¶ 39).
¶ 14. In viewing the evidence in this case in the light most favorable to the prosecution, we find it amply supports that Anderson and Kristina conspired to sell hydrocodone to Holt on September 14, 2006. Similar to the co-conspirators and intermediaries testifying in Bonner, Var-daman, and Temple, Kristina testified that she and Anderson had a common plan for selling hydrocodone to Holt. Kristina testified that she would call Anderson when someone needed Lortabs, and if he had any, he would bring them to her to sell. After being recalled by the defense as an adverse witness, Kristina testified again that “on September 14, 2006, [she] and *1091 [Anderson] had a standing agreement on how [she was] selling his pills.”
¶ 15. Additionally, as stated above, Holt and Kristina exchanged the following text message on the day of the sale:
1:19: It is usually between 5:30 and
6:30[,] depends what time he gets off.
1:19: I just left him a message to call me. If I do not hear from him by 4:45,1 am calling back!
1:51: Just talked to Rich. He is coming when he gets off work! Will you have the 25 for those or do you have to get it?
2:08: I told him I needed a few. He should have what I need! I have got to make some calls and try and make some money!
Kristina testified that when she stated “he,” “him,” and “Rich” in these text messages, they were all referring to Anderson. Kristina also testified that the text messages reflected the fact “that the pills ... [which] were to be sold to Holt were only going to be able to arrive and be at [her] house for sale [when Anderson] got there.”
¶ 16. The video surveillance tape showed Holt waiting around Kristina’s house with her and her children for approximately one hour. When Anderson arrived, he and Kristina proceeded to the back of the house, where they remained for several minutes. Kristina emerged from the back of the house and gave Holt a handful of “Mylan” pills, which Holt placed in a bag. Holt then gave Kristina money for the pills. Kristina told Holt that Anderson had to go and retrieve one other “Watson” pill from his truck. The video tape shows Anderson coming back into Kristina’s house, handing Kristina an object, Kristina handing the object to Holt, and Holt placing the object in the bag of pills. Anderson then left Kristina’s house.
¶ 17. There was additional evidence of a conspiracy presented besides Kristina’s testimony. On the day of his arrest, Anderson gave a handwritten statement regarding his arrest, which read: “I was selling Lortabs to some of my friends to help pay for my Lortabs.” Anderson’s brother admitted during the trial that Anderson had been selling various pills to buyers in his house. Lastly, the pills that Holt had purchased from Kristina were turned over to the police at the “post-buy” location, and all but the “Watson” pill were confirmed to be hydrocodone.
¶ 18. Kristina’s testimony, coupled with the other evidence presented at trial, sufficiently supports the jury’s finding that she and Anderson engaged in a common plan or scheme to sell hydrocodone pills to willing buyers. Accordingly, the trial court did not err in denying Anderson’s motion for a directed verdict and his motion for a judgment notwithstanding the verdict. This issue is without merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF CONSPIRACY TO SELL A CONTROLLED SUBSTANCE AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $1,000 FINE, $125 RESTITUTION TO THE HORN LAKE POLICE DEPARTMENT, AND $200 TO THE MISSISSIPPI CRIME VICTIMS’ COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.