CARLTON, J.,
for the Court.
¶ 1. On January 27, 2004, Donald Koger filed a complaint in the Hinds County Circuit Court against Austin Adcock, alleging negligence and gross negligence stemming from a June 3, 2002, automobile accident. After a two-day trial, the jury returned a *1106 verdict in favor of Adcock. The trial court denied Roger’s post-trial motions, and he perfected the instant appeal.
FACTS
¶2. On the morning of June 3, 2002, Roger was driving his car north on Terry Road in Jackson, Mississippi. Roger’s wife, Patricia Roger (Patricia), rode in the front passenger seat. At the intersection of Terry Road and Highway 80, Roger’s vehicle collided with a truck driven by Adcock. The collision caused Adcock’s truck to flip, but neither Adcock nor his passenger, Brad Blackwell, suffered any injuries as a result of the accident. According to Roger and another witness, Ad-cock caused the accident by proceeding through the intersection despite having the red light.
¶ 3. Officer Melvin Bender, a patrolman for the Jackson Police Department, testified at the trial that police dispatchers sent him to the scene of the accident. Officer Bender interviewed the parties and other witnesses to the accident and wrote the accident report. According to Officer Bender, Adcock stated that he had attempted to stop at the intersection, but his car would not stop. Adcock told Officer Bender that his brakes had failed. Officer Bender testified that Brenda McCabe, who had witnessed the accident and remained at the scene, stated that she saw Adcock’s brake lights flash, as if he had pumped his brakes before proceeding into the intersection. Officer Bender testified that both McCabe and Adcock stated that Adcock’s traffic signal was red when Adcock entered the intersection. Officer Bender stated in his testimony that, based on the statements of Adcock and McCabe, he possessed no doubt that Adcock ran the red light.
¶ 4. Roger called Adcock as an adverse witness. Adcock testified at trial that as he approached the intersection of Highway 80 and Terry Road, the traffic light turned from green to yellow. Adcock stated that he approached the intersection traveling at approximately 40 miles per hour. He applied his brakes, but they failed to slow down his truck. He testified that he then downshifted to second gear in another attempt to reduce his speed and stop his truck. Adcock testified that the last time he saw the traffic light, he saw a yellow light. Further, Adcock denied noticing any problems with his brakes at any point prior to the accident. Lastly, Adcock testified that he first saw Roger’s vehicle when Roger’s vehicle hit his truck. However, Adcock admitted, during his testimony, that he had stated in his deposition that upon entering the intersection, he swerved to the right in an effort to avoid the collision with Roger.
¶ 5. Roger next called McCabe, who witnessed the accident. McCabe testified that she was traveling west on Highway 80, behind Adcock’s truck, just before the accident occurred. McCabe saw the traffic light turn yellow. She testified that Ad-cock seemed to be trying to stop his truck. Adcock failed to stop his truck, and the light turned red before he entered the intersection. McCabe testified that cars occupied the left-hand turn lane, so she could not see Roger’s vehicle until it collided with Adcock’s truck. Further, McCabe testified that she checked on Adcock and his passenger and Roger and his wife after the accident. She asked Roger if he or his wife had suffered any injuries, and Roger indicated that they had not.
¶ 6. Roger called Adcock’s father, Eugene Adcock (Eugene), as an adverse witness. Eugene testified that Adcock and his passenger, Blackwell, left Eugene’s office in Pearl to perform some work for his business in the McDowell Road area of Jackson. Shortly after the men left, Eu *1107 gene received a call that they were involved in an accident. Eugene drove to the accident site. Eugene testified that he received no complaints before the accident regarding the truck’s brakes needing repair. He testified that Adcock told him the brakes seemed “spongy” when he applied them just before the accident. Eugene checked the brakes at some point after the accident. He testified that they seemed “spongy,” but they probably would have stopped the car. Further, Eugene testified that he spoke with Koger and Roger’s wife at the scene of the accident, and Koger indicated to him that they had not received any injuries as a result of the accident. According to Eugene, Koger told him that his back hurt, but it was not because of the accident.
¶ 7. Koger called Adcock’s passenger, Blackwell, to testify. Blackwell testified that he fell asleep in the truck as soon as they left Eugene’s office. He woke up when Adcock screamed, “They’re going to hit us!” He testified that he remembered Adcock swerving to the right just before the collision.
¶ 8. Patricia occupied the front passenger seat of Roger’s vehicle at the time of the collision. Patricia testified that she and Koger stopped at the intersection of Terry Road and Highway 80 when the traffic signal was red. The traffic signal turned green, and Koger proceeded into the intersection. Patricia looked up and saw Adcock’s truck headed toward their car, traveling at approximately 40 to 45 miles per hour. Koger stepped on his brakes, but he could not avoid the collision. Patricia testified that immediately after the accident, Koger told her his back “hurt, it burned, it was stinging.” Patricia testified that Koger declined treatment by medical personnel at the scene of the accident because of his concern for her. Patricia had recently undergone back surgery and, as a result, wore a heavy brace. Koger was driving her to a follow-up appointment with her physician when the accident occurred.
¶ 9. Koger testified that as he and Patricia approached the intersection of Terry Road and Highway 80, the traffic signal turned red. He stopped the car and waited for the signal to turn green. When the signal turned green, Koger glanced to his left and right and noticed that cars had stopped in the Highway 80 turn lanes. Those vehicles prevented Koger from being able to see all lanes of traffic on Highway 80. After checking for on-coming traffic, Koger proceeded through the intersection. Koger testified that as he accelerated through the intersection, he saw some movement “out of the corner of [his] eye.” When he looked up, he saw Adcock’s truck moving toward the intersection. Koger testified that he could tell by the truck’s speed that Adcock would not be able to stop before the intersection. Koger applied his brakes and braced himself for the collision.
¶ 10. Koger testified that he estimated Adcock’s speed just before the collision to be approximately 40 to 45 miles per hour. Koger estimated his own speed at approximately 10 to 15 miles per hour. Koger testified that after the impact, he immediately felt a “burning pain” in his back. Koger testified that following the collision, his primary concern was for Patricia’s welfare because of her recent back surgery. When Patricia asked Koger how he felt after the accident, he told her about the pain in his back. Koger chose not to ride in the ambulance for medical treatment following the collision because, as he asserts, he was focused on Patricia’s well-being. Rather than proceed to Patricia’s appointment, Koger and Patricia returned home and called Patricia’s doctor to schedule an appointment for the following day. *1108 Koger spent the rest of the day, June 3, trying to “rest [his] back.” However, Ko-ger was unable to rest because of his back pain. After taking Patricia to her appointment, Koger sought treatment for his back pain from his physician, Dr. Hale Byrd. Koger avers that he never sought treatment for back pain prior to the accident. However, according to Eugene’s testimony, Koger complained of back pain at the scene of the accident and admitted that the pain originated from a source other than the accident.
¶ 11. Dr. Byrd ordered an MRI. The results of that test prompted Dr. Byrd to refer Koger to a neurosurgeon, Dr. Winston Capel, who prescribed physical therapy for Koger. When the physical therapy proved ineffective in relieving Koger’s pain, Dr. Capel referred Koger to Dr. Jeffrey Summers. Dr. Summers prescribed several months of steroid injections. Dr. Capel diagnosed Koger with degenerative disc disease.
¶ 12. According to Adcock, Koger suffers from degenerative disc disease which Adcock contends existed prior to the accident. Adcock bases this position on Eugene’s testimony that Koger told Eugene at the scene of the accident that Koger’s back hurt, not because of the accident, but because of a preexisting back condition. Further, Adcock points to Koger’s own admission that he was denied entry into the military at age 22, presumably because of a back condition.[1] Koger made the following statement in his testimony: “My understanding was that it was something to do with my back[,] but they wouldn’t tell me what it was. And it didn’t bother me[.][S]o being 22 years old I just didn’t worry about it.” Koger reiterated that he never suffered any back pain in his life prior to the accident with Adcock.
¶ 13. After deliberations, the jury returned a verdict in favor of Adcock, which simply stated: “We, the Jury, find for the Defendant!” Koger filed a post-trial motion entitled: “Plaintiffs Motion for Judgment Notwithstanding the Verdict or, in the Alternative, New Trial or, in the Alternative, Additur,” which the trial court denied. Koger contends that the trial court erred in denying his post-trial motions. Second, Koger argues that the trial court erred in denying his request for a peremptory instruction. Lastly, Koger argues that the trial court improperly instructed the jury regarding liability and preexisting injuries.
¶ 14. Finding error in the instructions given to the jury, we reverse this case and remand it for a new trial. Because our ruling on this assignment of error disposes of Koger’s remaining assignments of error, the remaining assignments of error do not merit further discussion.
DISCUSSION
Whether the trial court improperly instructed the jury regarding liability and preexisting conditions.
¶ 15. Koger argues that jury instruction number 16 was extremely misleading, a misstatement of the law, and a misstatement of the facts. Koger argues that the jury instruction, as given, caused him extreme prejudice and may also have been the reason the jury found in favor of Ad-cock.
¶ 16. When reviewing challenges to jury instructions, this Court will affirm the trial court’s ruling “where the instructions actually given, when read together as a whole, fairly announce the law of the case and create no injustice.” Lepine v. State, 10 So.3d 927, 944(¶ 49) (Miss.Ct.App. *1109 2009) (quoting Ford v. State, 975 So.2d 859, 864(¶ 11) (Miss.2008)).
¶ 17. The jury instruction originally proffered by the defense stated the following:
A pre-existing condition is a condition that may have caused or contributed to the injury claimed by Donald Roger, but is also a condition from which Donald Roger suffered before his motor vehicle accident with Austin Adcock. Therefore, Austin Adcock is not responsible for the injuries of Donald Roger which are the sole proximate result of his preexisting conditions. If you find that Donald Roger suffered from pre-existing conditions such as neck pain, back pain, shoulder pain, or numbness in his hands or legs before the accident that occurred on June 3, 2002, you should consider those pre-existing conditions when reaching your verdict. You should consider whether those pre-existing conditions were unrelated to Donald Roger’s present injuries, whether those pre-ex-isting conditions contributed to his present injuries, or whether those pre-exist-ing conditions were the sole proximate cause of his injuries and adjust your verdict as you see fit based on the causal relation, if any, between the Plaintiffs pre-existing condition and his present complaints.
¶ 18. Despite Adcock’s assertions to the contrary, Roger’s attorney, Don Evans, made a timely objection to the proffered jury instruction. The following exchange took place while the parties and the trial court worked to finalize the jury instructions:
THE COURT: So, D-4, any objections?
MR. EVANS: I have an objection. There’s no evidence of any prior injury. There’s no evidence of any prior pain and it comes down in here about four lines down it says, if you find that Donald Roger suffers from preexisting conditions such as neck pain — that’s never even come up — back pain, shoulder pain or numbness in his hands. That’s never even come up. We’ve had back pain and we had leg pain. And this is misleading.
[DEFENSE COUNSEL]: If it pleases the court I will be more than happy to alter the instructions and limit it to the first two sentences.
THE COURT: Okay.
MR. EVANS: And it’s misleading. It looks like it’s saying if you find he had a preexisting condition, maybe even the degenerative disc disease, that he wouldn’t be liable for it, for this injury.
[DEFENSE .COUNSEL]: Well, as a matter of law, he’s not liable for the preexisting injury. And if the jury finds that this accident did not aggravate or exacerbate then the jury has to return a verdict for my client. And I think that instruction is clear.
THE COURT: Okay. D-5 is the same as the court’s instruction. Will be refused. I believe D-6 was already given in the plaintiff's] instructions. D-6 is refused. D-7, any objections.
[[Image here]]
THE COURT: Okay. I’m going to go and look at these again and I will send them back in as to how I modified them and I’ll state on the record when I return which ones I’ve granted and refused.
¶ 19. After a break, the trial judge stated for the record the jury instructions he chose to grant or refuse. The trial judge made the following statement:
THE COURT: As to the instructions that were given, I went over some of them earlier, but let me go back through them again.... D-4 was given with modification. The court determined *1110 that this was not a case to submit to the jury to consider apportionment of fault.
With respect to D-4 that was submitted dealing with the preexisting condition the court determined that that instruction should be modified where the defendant will be allowed to make that argument to the jury regarding whether or not there were any preexisting conditions. So the first two sentences were given. D-4 was modified. All right. Let’s bring the jury in.
¶ 20. As reflected in the record transcript, after the defense counsel suggested the modification of the instruction to include only the first two sentences, Evans reiterated his objection, stating: “And it’s misleading.” Mr. Evans reiterated his objection to the modification as misleading, thereby indicating that he did not acquiesce in the modification and found the modified instruction still to be misleading. Although Evans did not renew his objection to the modification of instruction D-4 after the trial judge made his rulings on the jury instructions and objections thereto, his previous objection suffices to preserve the issue for our review.
¶ 21. With the trial court’s modification, the jury instruction actually given to the jury read as follows:
A pre-existing condition is a condition that may have caused or contributed to the injury claimed by Donald Roger, but is also a condition from which Donald Roger suffered before his motor vehicle accident with Austin Adcock. Therefore, Austin Adcock is not responsible for the injuries of Donald Roger which are the sole proximate result of his preexisting conditions.
¶ 22. The instruction provides a misleading and incorrect statement of the law as to the responsibility of aggravation of preexisting conditions caused by or contributed to by the negligence of another. We agree that the law provides that Roger is not entitled to damages for any injuries which existed at the time of the accident with Adcock. Winston v. Cannon, 430 So.2d 413, 416 (Miss.1983). However, if Adcock’s negligence caused any aggravation of any preexisting injury to Roger, Adcock bears the responsibility for the portion of the injury or the aggravation of the injury that he caused; and the jury may be instructed to consider the aggravation of the injury. Id. See also Harkins v. Paschall, 348 So.2d 1019, 1021-22 (Miss.1977). Moreover, where the jury cannot apportion the damages, the defendant may be liable for the whole amount of damages. This Court previously stated that “[o]ne who injures another suffering from a preexisting condition is liable for the entire damage when no apportionment can be made between the preexisting condition and the damage caused by the defendant.” Doe ex rel. Doe v. N. Panola Sch. Dist., 906 So.2d 57, 61(¶ 12) (Miss.Ct.App.2004) (quoting Brake v. Speed, 605 So.2d 28, 33-34 (Miss.1992)).
¶ 23. Jury instruction 16 misleads the jury on this point. The instruction implies that, because Roger suffered from degenerative disc disease before the accident occurred, Adcock could not be held liable for any condition caused by the degenerative disc disease. The language of the instruction essentially eliminates any jury question regarding the aggravation of any preexisting injury or condition or the extent of any preexisting injury to Roger. Further, although the instruction correctly informs the jury that Adcock cannot be held liable for Roger’s preexisting injuries, the instruction fails to instruct the jury as to Adcock’s responsibility for any aggravation of Roger’s preexisting degenerative disc disease caused by or contributed to by Adcock’s negligence.
*1111 ¶ 24. Moreover, this Court examines jury instructions as a whole, making sure the instructions given fairly announce the law of the case and create no injustice. Lepine, 10 So.3d at 944(¶ 49). Examining the instructions as a whole, we find no other instruction which clarifies or explains the law regarding Roger’s preexisting condition. Other instructions given to the jury explain proximate cause, but they still fail to address the issue of Roger’s preexisting condition. Jury instruction 10 instructed the jury as follows regarding proximate cause:
The Court instructs the jury that an element, or test, of proximate cause is that an ordinarily prudent person should reasonably have foreseen that some injury might probably occur as a result of his or her negligence. It is not necessary to foresee the particular injury, the particular manner of the injury, or the extent of the injury.
¶ 25. Jury instruction 11 states the following:
This Court instructs the jury that if you find from the preponderance of the evidence that the Defendant, Austin Ad-cock, could have avoided the collision in question by the exercise of reasonable care on his part or by taking such measures, if any, as an ordinarily prudent person, in his position, would have taken under similar circumstances which it was his duty then and there to do so; and if you further find from the preponderance of the evidence in this regard that the Defendant, Austin Adcock, failed to use reasonable care at the time and place in question, and that such failure, if any, on his part ivas the proximate contributing cause of the accident and, injuries to the Plaintiff, Donald Roger, then in such case, your verdict should be in favor of the Plaintiff, Donald Roger.
(Emphasis added).
¶ 26. Despite its attempts to instruct the jury regarding proximate cause, the trial court failed to properly instruct the jury regarding the proximate cause of any aggravation of Roger’s asserted preexisting condition. Roger testified that despite his physician’s testimony that he possessed degenerative disc disease, Roger had never experienced any back pain or sought medical treatment for back problems prior to the accident with Adcock. The jury should have been instructed as to Adcock’s responsibility if his negligence contributed to an aggravation of Roger’s asserted preexisting condition.
¶ 27. Finding reversible error in the jury instructions that were given, we reverse this case and remand for a new trial consistent with this opinion. Roger’s remaining assignments of error are therefore moot.
¶ 28. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
RING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT.

. Koger was 62 years old at tire time of trial.